# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00164-CV

**Concho County, Texas, Appellant**

**v.**

**Billy Randall Gough, as Temporary Administrator of the Estate of Gary August Gough,
Appellee**

**FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT
NO. DIM-10-04120, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Concho County ("the County") brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction in a personal injury suit brought by Billy Randall Gough, temporary administrator of the estate of Gary August Gough, under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, .101 (West 2011). We affirm the order denying the plea to the jurisdiction.

## BACKGROUND

The basic facts in this case are undisputed. Before dawn on September 29, 2008, Gary August Gough walked onto the roadway of U.S. Highway 87 in Eden, Texas, and was struck

by an oncoming Ford F-150 pickup truck.[1] The driver of the vehicle was Concho County Sheriff Richard Doane, who then contacted the county police dispatch by radio to report that he had struck a pedestrian. An officer from the Texas Department of Public Safety (DPS), Trooper Rob Manley, evaluated the scene and authored a report identifying Gary Gough's failure to yield the right of way as the cause of the accident. Gary Gough suffered injuries from the impact and was transported from the scene for treatment.[2]

Subsequent to this incident, the parties exchanged a series of communications. On October 15, 2008, counsel for Gary Gough submitted an open records request to the Concho County Attorney for "all county cell phone records for Richard Doane and all other sheriff personnel for September 28, 29, and 30, 2008." On October 28, an attorney for the County wrote a letter to Gary Gough stating that an independent investigation found Gary Gough's negligence to have caused the accident and demanding that he pay $2,663.14 for repairs to the sheriff's vehicle. Then, on November 3, another attorney for the County responded in writing to Gary Gough's open records request, stating, "Because the requested information relates to an incident that the County anticipates will form the basis of litigation . . . this information is being withheld." Finally, on December 11, the same attorney for the County wrote in another letter to Gary Gough's counsel that

---

[1] Gary Gough has since died for reasons unrelated to the injuries he suffered in this accident. For clarity, we will refer to him by first and last name, while "Gough" will refer to Temporary Administrator Billy Randall Gough, the plaintiff-appellee in this case.

[2] The parties disagree about the timing and circumstances surrounding the accident. In his First Amended Original Petition, Gough alleges that the accident occurred at approximately 5:00 a.m. and the sheriff did not request any help or report the accident until 6:30 a.m. The County, however, contends that the accident occurred at 6:34 a.m. and that EMS was at the scene within five minutes. Gough also contends that the sheriff was speeding and failing to use his headlights at the time of the accident.

"Concho County's election to withhold the requested documents pursuant to the litigation exception is based, in part, on statements made by you regarding bringing a lawsuit on behalf of your client Gary Gough."

On September 28, 2010, as Temporary Administrator of Gary Gough's estate, Gough sued the County for the negligent operation of Doane's vehicle under the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (providing for governmental liability if property damage, personal injury, or death is proximately caused by an employee's negligence and "arises from the operation or use of a motor-driven vehicle"). The County filed a plea to the jurisdiction asserting governmental immunity. It alleged that Gough failed to comply with the notice of the Texas Tort Claims Act as required for a waiver of such immunity. *See id.* § 101.101. After a hearing, the trial court denied the County's plea to the jurisdiction. This interlocutory appeal followed.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). In reviewing a plea to the jurisdiction, an appellate court does not look to the merits of the case except to the extent required to resolve the jurisdictional inquiry. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). If the pleadings neither affirmatively demonstrate the trial court's jurisdiction nor affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the

3

plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227. Unless a pleaded fact is challenged and negated, it must be taken as true for purposes of determining subject-matter jurisdiction. *See City of Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied); *see also University of Texas v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.).

## DISCUSSION

Absent a waiver, governmental entities are generally immune from suits for damages. *University of Tex. Sw. Med. Ctr. v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010). Such immunity deprives a trial court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 224. The Texas Tort Claims Act ("the Act") provides a limited waiver of governmental immunity "to the extent of liability created by [the Act]." Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (West 2011); Tex. Gov't Code Ann. § 311.034 (West Supp. 2011). To take advantage of this waiver, claimants must provide a governmental entity with sufficient notice of their claims. Tex. Civ. Prac. & Rem. Code Ann. § 101.101. In its sole point of error, the County alleges that because it did not receive the required statutory notice of Gough's claim, its plea to the jurisdiction should not have been denied. *See Colquitt v. Brazoria County*, 324 S.W.3d 539, 543 (Tex. 2010) (per curiam).

Under the Act, a party seeking to impose liability must provide a governmental entity formal, written notice not later than six months after the day the incident giving rise to the claim occurred, reasonably describing (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a); *Cathey v. Booth*,

4

900 S.W.2d 339, 340 (Tex. 1995). However, the formal notice requirement does not apply "if the governmental unit has actual notice of the death, injury, or property damage claimed." Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c). The purpose of the Act's notice provision is to ensure prompt reporting of claims to allow governmental units time to guard against unfounded claims, settle claims, and prepare for trial. *Cathey*, 900 S.W.2d at 341. In this case, the parties agree that Gough did not present the County with formal notice within six months of the accident. Accordingly, their dispute centers on whether the County received actual notice of Gough's claim.

The Texas Supreme Court interpreted the Act's actual notice provision in *Cathey v. Booth*. *Id.* at 340–41. In that case, the appellants urged that a hospital had actual notice of their negligence claims by virtue of its medical records of the stillbirth of their child. However, the court rejected that interpretation of actual notice, which would "require[] *only* that a governmental unit have knowledge of a death, an injury, or property damage." *Id.* at 341 (emphasis added). The court asserted that such an interpretation would force defendants such as hospitals "to investigate the standard of care provided to each and every patient that received treatment" and would therefore "eviscerate the purpose of the statute." *Id.* The court held that actual notice to a governmental entity "requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Id.*

Before the hearing on the plea to the jurisdiction in this case, Gough filed a petition alleging that the County was properly placed on notice of his claims. Gough claims that one month after the accident, on October 28, 2008, the County made demand on Gary Gough for the damage

to the sheriff's vehicle from the collision. On November 3, 2008, an attorney for the County cited the litigation exception in denying an open records request by Gary Gough's counsel. Finally, Gough claims that on December 11, 2008, in another response by the County to the open records request, the same attorney acknowledged statements by Gary Gough's counsel regarding a lawsuit on his behalf. According to the copy of that letter attached to the petition, "the County's election to withhold the requested documents pursuant to the litigation exception [was] based, in part, on comments by [Gary Gough's attorney] regarding bringing a lawsuit on [his] behalf."

The County does not dispute any of these pleaded facts. *See Leggett*, 257 S.W.3d at 462. Accordingly, Gough's pleadings affirmatively demonstrate each factor set forth in *Cathey*. The County had knowledge that Gary Gough was injured and that he and the County were the parties involved. In addition, the County had knowledge that it was alleged to be at fault in producing or contributing to Gary Gough's injury. Its explicit recognition that a lawyer for Gary Gough made statements about suing on his behalf affirmatively demonstrates that the County knew of actual allegations by Gary Gough that the County's fault produced his injuries.

Nevertheless, the County claims that Gough's allegations fail to satisfy the requirements of the actual notice provision because the County had no subjective awareness of its fault in producing or contributing to Gough's alleged injuries. The County argues that it had no subjective awareness of fault because it relied on the DPS officer's report indicating that only Gary Gough's negligence was to blame. We recognize that the requirement in *Cathey* of knowledge of alleged fault is met when a governmental unit is subjectively aware of its fault in producing or contributing to a claimant's injury. *Texas Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347

6

(Tex. 2004) (superseded on other grounds). However, we need not decide whether the record demonstrates that Concho County had subjective awareness of fault. We hold that because the County had knowledge of an actual allegation of fault against it, no demonstration of subjective awareness of fault is required.

The County's reasoning misconstrues the requirements for actual notice under the Act. It relies heavily on language introduced by the Texas Supreme Court when it clarified the second of *Cathey*'s elements in *Texas Department of Criminal Justice v. Simons*. In that case, the court grappled with determining the minimum requirement for establishing knowledge of alleged fault. The court reasoned that the bar must not be set too high for any claimant to clear, nor too low to preserve any occasion for formal notice, writing:

> By holding in *Cathey* that "actual notice to a governmental unit requires knowledge of . . . the governmental unit's alleged fault producing or contributing to the death, injury, or property damage," we did not mean that the governmental unit was required to know that the claimant had actually made an allegation of fault. Such knowledge would be tantamount to the notice required by section 101.101(a), only less formal, making the "actual notice" exception in subsection (c) virtually insignificant. On the other hand, *Cathey* cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should have learned of its possible fault by investigating the incident. Interpreted so broadly, subsection (c) would become the rule, leaving subsection (a) as the exception for situations where the governmental unit was wholly unaware that any incident had occurred at all . . . .

*Simons*, 140 S.W.3d at 347. Accordingly, the court defined the outer boundaries of "knowledge of alleged fault" by reference to its original intent in setting forth the second of *Cathey*'s actual notice requirements. That intent, the court wrote, was to provide governmental units with "knowledge that amounts to the same notice to which it is entitled by section 101.101(a)." The court then reasoned:

7

> That *includes* subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury. If a governmental unit has this subjective awareness of fault, along with the other information to which it is entitled under section 101.101(a), then requiring formal, written notice in addition would do nothing to further the purpose of the statute—which is, "to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."

*Id.* (emphasis added) (quoting *Cathey*, 900 S.W.2d at 341).

In light of this reasoning, the County is mistaken in framing subjective awareness of fault as required, not merely sufficient, to demonstrate actual notice to a governmental unit. The court's acceptance of subjective awareness of fault as an avenue for meeting *Cathey*'s second element did not foreclose all other avenues, such as showing that a governmental unit had knowledge of an actual allegation of fault. *Cf. Colquitt*, 324 S.W.3d at 542 (citing *Cavazos v. City of Mission*, 797 S.W.2d 268, 271 (Tex. App.—Corpus Christi 1990, no writ) ("In *Cavazos*, the court of appeals held that a lawsuit, served on the governmental unit within six months of the incident, constituted actual notice under the [Act].")). Instead, the court recognized that awareness of an actual allegation would be too *much* to require every claimant to prove and subjective awareness of fault would be a *less* stringent alternative still consistent with the purposes of the statute.

Furthermore, in these circumstances, it would not further the purpose of the Act's notice provisions to require that a governmental unit have subjective awareness of fault. As the court in *Cathey* stated, "The purpose of the notice requirement is to ensure prompt reporting of claims to facilitate the government's ability to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial." 900 S.W.2d at 341. In general, a party may begin

8

gathering information necessary to prepare for settlement or trial from the moment it knows of an allegation of fault against it, whatever its subjective belief regarding the merit of that allegation. *Cf. University of Tex. Sw. Med. Ctr.*, 324 S.W.3d at 550 (declining to require knowledge of a breach of standard of care for actual notice that hospital's error contributed to patient's death). Where a governmental unit is actually made aware of an allegation of fault, even by less than formal means, the purpose of the statute is met; requiring formal written notice in such circumstances would do nothing to further that purpose. *See Simons*, 140 S.W.3d at 347.

Moreover, as the court explained in *Simons*, the purpose of the "knowledge of alleged fault" requirement is to ensure the government is provided with "knowledge that amounts to the same notice to which it is entitled" by formal notice. *Id.* The formal notice provision requires a claimant to inform the government of the damage or injury claimed, the time and place of the incident, and the incident. None of these elements require a showing that the government subjectively believes it is at fault.

The County's interpretation of actual notice would effectively narrow "awareness of alleged fault" to the point of requiring awareness of liability. "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *University of Tex. Sw. Med. Ctr.*, 324 S.W.3d at 550. In this case, an allegation of such responsibility was clearly communicated. The pleadings affirmatively demonstrate that the County had knowledge of Gary Gough's allegations in satisfaction of the actual notice requirements of the Texas Tort Claims Act; we therefore hold that governmental immunity was waived and the trial court's exercise of subject-matter jurisdiction was proper. We overrule the County's sole issue on appeal.

9

**CONCLUSION**

Because we hold that actual notice was received under section 101.021 of the civil practice and remedies code, we affirm the trial court's order denying the County's plea to the jurisdiction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   December 9, 2011